Evan J. Smith
BRODSKY & SMITH, LLC
240 Mineola Boulevard
First Floor
Mineola, NY 11501
Telephone:    516.741.4977
Facsimile:    516.741.0626
esmith@brodskysmith.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANAND CHOUDHURI,<br><br>                    Plaintiff,<br><br>        v.<br><br><br>FORTERRA, INC., KARL WATSON, JR.,<br>CHRIS MEYER, RICHARD<br>CAMMERER, JR., RAFAEL<br>COLORADO, MAUREEN HARRELL,<br>CHAD LEWIS, CLINT MCDONNOUGH,<br>JOHN MCPHERSON, and JACQUES<br>SARRAZIN,<br><br>                    Defendants. | Case No.:<br><br>COMPLAINT FOR:<br><br>(1)   Breach of Fiduciary Duties<br>(2)   Aiding and Abetting Breach of Fiduciary Duties<br>(3)   Violation of § 14(a) of the Securities Exchange Act of 1934<br>(4)   Violation of § 20(a) of the Securities Exchange Act of 1934<br><br><br>DEMAND FOR JURY TRIAL |

Plaintiff, Anand Choudhuri, by and through his attorneys, alleges upon information and belief, except for those allegations that pertain to him, which are alleged upon personal knowledge, as follows:

### SUMMARY OF THE ACTION

1.     Plaintiff brings this stockholder action against Forterra, Inc. ("Forterra" or the "Company") and Forterra's Board of Directors (the "Board" or the "Individual Defendants," and

collectively with Forterra, the "Defendants") for Sections 14(a) and 20(a) of the Securities and

Exchange Act of 1934 (the "Exchange Act") and for breaches of fiduciary duty as a result of

Defendants' efforts to sell the Company to Quikrete Holdings, Inc. and Jordan Merger Sub, Inc.

("Merger Sub," and collectively with Quikrete Holdings, Inc., "Quikrete") as a result of an unfair

process for an unfair price, and to enjoin a proposed all cash transaction valued at approximately

$2.74 billion (the "Proposed Transaction").

2.      The terms of the Proposed Transaction were memorialized in a February 22, 2021

filing with the United States Securities and Exchange Commission ("SEC") on Form 8-K attaching

the definitive Agreement and Plan of Merger (the "Merger Agreement").  Under the terms of the

Merger Agreement, Quikrete will acquire all of the outstanding shares of Forterra's common stock

at a price of $24.00 per share in cash. As a result, Forterra will become an indirect wholly-owned

subsidiary of Quikrete.

3.      Thereafter, on March 11, 2021, Forterra filed a Preliminary Information Statement

on Form PREM14C (the "Information Statement") with the SEC in support of the Proposed

Transaction.

4.      Plaintiff alleges that the Individual Defendants (defined herein) have breached their

fiduciary duties by agreeing to the Proposed Transaction based on a flawed process which will

result in inadequate compensation for Plaintiff.

5.      The Proposed Transaction is unfair and undervalued for a number of other reasons.

Significantly, the Information Statement describes an insufficient process in which the Board

rushed through an inadequate "sales process".  In addition the consummation of the Proposed

Transaction is a foregone conclusion given that the Company's controlling stockholder, Forterra

US Holdings, LLC, an affiliate of Lone Star Funds ("Lone Star"), which owns approximately

52.7% of the outstanding stock of the Company, has agreed to vote in favor of the Proposed Transaction, thus negating the need for a stockholder vote.

6.      In approving the Proposed Transaction, the Individual Defendants have breached their fiduciary duties of loyalty, good faith, due care and disclosure by, *inter alia*, (i) agreeing to sell Forterra without first taking steps to ensure that Plaintiff in his capacity as a Company public stockholder would obtain adequate, fair and maximum consideration under the circumstances; and (ii) engineering the Proposed Transaction to benefit themselves and/or Quikrete without regard for Forterra's public stockholders.  Accordingly, this action seeks to enjoin the Proposed Transaction and compel the Individual Defendants to properly exercise their fiduciary duties to Plaintiff and other Forterra stockholders.

7.      Next, it appears as though the Board has entered into the Proposed Transaction to procure for itself and senior management of the Company significant and immediate benefits with no thought to Plaintiff, as well as the Company's public stockholders.  For instance, pursuant to the terms of the Merger Agreement, upon the consummation of the Proposed Transaction, Company Board Members and executive officers will be able to exchange all Company equity awards for the merger consideration.

8.      In violation of the Exchange Act and in violation of their fiduciary duties, Defendants caused to be filed the materially deficient Information Statement on March 11, 2021 with the SEC.  The Information Statement is materially deficient, deprives Plaintiff of the information necessary to make an intelligent, informed and rational decision of whether to seek appraisal of his shares rather than accept the consideration proffered in the Proposed Transaction, and is thus in breach of Defendants fiduciary duties.  As detailed below, the Information Statement omits and/or misrepresents material information concerning, among other things: (a) the sales

process and in particular certain conflicts of interest for management; (b) the financial projections for Forterra, provided by Forterra to the Company Board's financial advisor Citigroup Global Markets Inc. ("Citi"); and (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinions created by Citi and provide to the Company and the Board

9.      Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff.

## **PARTIES**

10.     Plaintiff is a citizen of California and, at all times relevant hereto, has been a Forterra shareholder.

7.      Defendant Forterra is a Delaware corporation whose principal executive office is located at 511 East John Carpenter Freeway, 6th Floor, Irving, TX 75062.  Forterra's common stock is publicly traded on Nasdaq under the symbol "FRTA."

8.      Defendant Karl Watson, Jr. ("Watson") has served as director of Company at all relevant times. In addition, Watson also serves as the Company's Chief Executive Officer ("CEO").

9.      Defendant Chris Meyer ("Meyer") has served as director of Company at all relevant times.  In addition, Meyer also serves as the Company's Chairman of the Board.

10.     Defendant Richard Cammerer, Jr. ("Cammerer") has served as director of Company at all relevant times.

11.     Defendant Rafael Colorado ("Colorado") has served as director of Company at all relevant times.

12.     Defendant Maureen Harrell (Harrell") has served as director of Company at all relevant times.

4

13.     Defendant Chad Lewis (Lewis") has served as director of Company at all relevant times.

14.     Defendant Clint McDonnough (McDonnough") has served as director of Company at all relevant times.

15.     Defendant John McPherson (McPherson") has served as director of Company at all relevant times.

16.     Defendant Jacques Sarrazin (Sarrazin") has served as director of Company at all relevant times.

17.     The Defendants named in paragraphs 8-16 are referred to herein as "Individual Defendants" or "Director Defendants."

11.     Non-Party Quikrete manufactures and supplies packaged concrete products such as concrete and mortar mixes, cements, waterproofing, blacktop, and concrete repair products for commercial building and home improvement industries. Quikrete is incorporated in Delaware and headquartered in Atlanta, GA.

## JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and Section 20(a) of the Exchange Act.  This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have.  The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

18.     Personal jurisdiction exists over each defendant either because the defendants conduct business in or maintain operations in this District, or is an individual who is either present

in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

19.    Venue is proper in this District pursuant to 28 U.S.C. § 1391, because each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District; for example, the Company's stock trades on the Nasdaq Stock Exchange which is headquartered in this District.

## SUBSTANTIVE ALLEGATIONS

20.    By reason of the Individual Defendants' positions with the Company as officers and/or directors, said individuals are in a fiduciary relationship with Forterra and Plaintiff as a Forterra stockholder and owe the Company and Plaintiff the duties of due care, loyalty, and good faith.

21.    Each of the Individual Defendants are required to act with due care, loyalty, good faith and in the best interests of the Company and public stockholders of the Company such as Plaintiff.  To diligently comply with these duties, directors of a corporation must:

      a.    act with the requisite diligence and due care that is reasonable under the circumstances;

      b.    act in the best interest of the Company and its stockholders such as Plaintiff;

      c.    use reasonable means to obtain material information relating to a given action or decision;

      d.      refrain from acts involving conflicts of interest between the fulfillment of their roles in the Company and the fulfillment of any other roles or their personal affairs;

      e.      avoid competing against the company or exploiting any business opportunities of the company for their own benefit, or the benefit of others; and;

      f.      disclose to the Company all information and documents relating to the company's affairs that they received by virtue of their positions in the Company.

22.      In accordance with their duties of loyalty and good faith, the Individual Defendants, as directors and/or officers of Forterra, are obligated to refrain from:

      a.      participating in any transaction where the directors' or officers' loyalties are divided;

      b.      participating in any transaction where the directors or officers are entitled to receive personal financial benefit not equally shared by the Company or its public stockholders, including Plaintiff; and/or;

      c.      unjustly enriching themselves at the expense or to the detriment of the Company or its stockholders, including Plaintiff.

23.      Plaintiff alleges herein that the Individual Defendants, separately and together, in connection with the Proposed Transaction, violated, and are violating, the fiduciary duties they owe to Forterra and Plaintiff in his capacity as a public stockholder of Forterra, including their duties of loyalty, good faith, and due care.

24.     As a result of the Individual Defendants' divided loyalties, Plaintiff will not receive adequate, fair or maximum value for their Forterra common stock in the Proposed Transaction

## SUBSTANTIVE ALLEGATIONS

### Background of Forterra

25.     The Company is a leading manufacturer of water and drainage pipe and products in the U.S. and Eastern Canada for a variety of water-related infrastructure applications, including water transmission, distribution, drainage and stormwater systems. Based in Irving, Texas, Forterra's product breadth and scale help make it a preferred supplier for water-related pipe and products, serving a wide variety of customers, including contractors, distributors and municipalities. Forterra serves construction contractors, developers, utility companies and contractors, municipalities, and waterworks distributors and contractors through distributors. The Company was founded in 1899 and is headquartered in Irving, Texas

26.     The Company's most recent financial performance press release before the announcement of the Proposed Transaction indicated sustained and solid financial performance. For example, in an October 28, 2020 press release announcing its 2020 Third Quarter Financial Results, the Company highlighted such milestones as increases in gross profit, net income, and adjusted EBITDA. Specifically, the Company, "Increased gross profit by 23.7% to $126.3 million as compared to $102.1 million in the prior year quarter and improved gross profit margin by 560 basis points year-over-year. Net income increased by 28.6% to $28.8 million compared to $22.4 million in the prior year quarter. Increased Adjusted EBITDA[1] by 23.8% to $99.0 million as compared to $80.0 million in the prior year quarter, and Adjusted EBITDA margin improved by 440 basis points year-over-year."

27.     Speaking on these positive results, Forterra CEO Defendant Watson commented, "The third quarter was another solid one for the company despite the continued challenges

associated with the COVID-19 pandemic. We generated progressive improvement in Adjusted EBITDA, Adjusted EBITDA margin, and operating cash flow in the quarter. Additionally, we received a favorable arbitration decision in connection with the Heidelberg earnout dispute, and lastly, both rating agencies issued credit rating upgrades, which highlight the progress we have made since 2019."

28.     Defendant CEO Watson continued the Company's Conference Call for the Q3 2020 Financial Results, "During the third quarter, we continued the execution of our five improvement pillars: health and safety, plant level operational discipline, enhanced commercial capabilities, working capital efficiency and G&A effectiveness. This progressive execution led to further expanded gross profit margins in both of our operating segments and a record quarterly EBITDA and adjusted EBITDA. We achieved these record outcomes despite a decline in our shipment volumes."

29.     Nevertheless, the Individual Defendants have caused Forterra to enter into the Proposed Transaction.

***The Flawed Sales Process***

30.     As detailed in the Information Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants, and was designed with only one concern in mind – to effectuate a sale of the Company to by any means necessary irrespective of the price obtained.

31.     Primarily, the Information Statement gives no adequate explanation for why the Board failed to adequately protect minority stockholder interests, including failing to include a "majority of the minority" vote provision.

32.     Moreover, the Information Statement also fails to give an adequate explanation as to why no committee of independent Directors was created to run the sales process.

33.     In addition, the Information Statement is also unclear as to the existence or nature of any non-disclosure agreement entered into between Forterra and any potentially interested third party, including Quikrete, as part of the sales process, and if the terms of any such agreements included "don't-ask, don't-waive" provisions or standstill provisions, and if so, the specific conditions, if any, under which such provisions would fall away.   Specifically, while the Information Statement describes such clauses in non-disclosure agreements with other potentially interested third parties, it fails to discuss any such clause in relation to the non-disclosure agreement with Quikrete.

34.     It is not surprising, given this background to the overall sales process, that it was conducted in a completely inappropriate and misleading manner.

**The Proposed Transaction**

35.     On February 22, 2021, Forterra issued a press release announcing the Proposed Transaction.   The press release stated, in relevant part:

> **Irving, TX and Atlanta, GA – February 22, 2021** – Forterra, Inc. ("Forterra" or "the Company") (NASDAQ:FRTA), a leading manufacturer of water and drainage infrastructure pipe and products in the United States and Eastern Canada, today announced that it has entered into a definitive agreement under which Quikrete Holdings, Inc. ("Quikrete") will acquire all outstanding shares of Forterra for $24.00 per share in an all cash transaction valued at approximately $2.74 billion, including outstanding debt.
>
> The transaction, which was unanimously approved by the Forterra Board of Directors, represents a premium of approximately 38.5% to Forterra's 90-day volume-weighted average share price on February 19, 2021. Upon completion of the transaction, Forterra will become a privately held company.
>
> "Forterra and Quikrete are an ideal strategic fit, and this combination is a natural next step for our company, enabling us to better serve our customers across the company on their concrete projects from start to finish. We are excited to grow our

capabilities in the potable water distribution market through Forterra's well-respected U.S. Pipe business," said Will Magill, CEO of Quikrete Holdings, Inc. "We are excited to welcome the Forterra team and bring our two great companies together."

"We are pleased to announce this transaction with Quikrete, which delivers a compelling cash premium to our shareholders," said Forterra CEO Karl Watson, Jr. "We admire Quikrete's impressive 80 year history and commitment to delivering superior service and products to customers. Over the past two years, we have made significant progress executing on our five improvement pillars of safety, plant-level operational discipline, enhanced commercial capabilities, working capital efficiency, and general and administrative expense effectiveness. Today's announcement advances that progress and is a testament to our team members' hard work and commitment to Forterra. We look forward to working with Quikrete to build on our positive momentum and achieve even greater success together."

"Following a thorough review of the opportunities available to Forterra to deliver the greatest value to shareholders, the Forterra Board of Directors unanimously determined that entering into this agreement with Quikrete and becoming a private company again is the best path forward to maximize value," said Chris Meyer, Chairman of the Forterra Board. "The transaction with Quikrete represents an exciting new chapter for Forterra – one that could not have been achieved without the leadership from the entire management team and the dedication of all Forterra team members."

In light of this announcement, Forterra will issue earnings as planned after the close of business February 24, 2021, but will not be hosting its previously announced fourth quarter and full year 2020 earnings conference call on February 25, 2021.

**Approvals**

An affiliate of Lone Star Funds ("Lone Star"), a global private equity firm, acquired Forterra in 2015 and has maintained a majority ownership since the Company's initial public offering in 2016. Following execution of the merger agreement, Lone Star, which owns approximately 53% of the Company's outstanding shares of common stock, approved the transaction by written consent. No further action by Forterra's shareholders is needed or will be solicited in connection with the merger.

The transaction is expected to close in the fourth quarter of 2021, subject to customary closing conditions, including receipt of clearance under the Hart-Scott-Rodino Antitrust Improvements Act of 1976.

***The Unfair Merger Consideration***

36.    Significantly, the Company's financial prospects and opportunities for future growth establish the inadequacy of the merger consideration.

37.     First, the compensation afforded under the Proposed Transaction to Forterra stockholders significantly undervalues the Company.  The proposed valuation does not adequately reflect the intrinsic value of the Company.  Moreover, the valuation does not adequately take into consideration how the Company is performing, considering key financial improvements.

38.     Since the COVID-19 outbreak had its impact on the Stock Market in March 2020, Forterra's stock price has steadily increased up until the announcement of the Proposed Transaction. On March 18, 2020, Forterra's stock reached as low as $3.55 per share, gradually making its way up to $22.02 per share on February 19, 2021. There is no indication that the stock price would not continue to rise above that $22.02 stock price, or even substantially above the proposed consideration offered by Quikrete in the Proposed Transaction to take Forterra private.

39.     On January 8, 2021, *Zacks Equity Research* released an article regarding Forterra's stock and its analysis on the company. The article praised the Company and gave it a compelling review, "Forterra (FRTA) is a stock many investors are watching right now. FRTA is currently sporting a Zacks Rank of #2 (Buy) and an A for Value. investors should note that FRTA has a P/CF ratio of 9.51. This data point considers a firm's operating cash flow and is frequently used to find companies that are undervalued when considering their solid cash outlook. FRTA's P/CF compares to its industry's average P/CF of 22.15. Within the past 12 months, FRTA's P/CF has been as high as 10.14 and as low as 2.34, with a median of 7.12. These are just a handful of the figures considered in Forterra's great Value grade. Still, they help show that the stock is likely being undervalued at the moment. Add this to the strength of its earnings outlook, and we can clearly see that FRTA is an impressive value stock right now."

40.     Due to Forterra's ability to product excellent financials during the global pandemic and recent exponential stock success, the Proposed Transaction represents a significant synergistic

benefit to Quikrete, which operates in the same industry as Forterra, and will use the desired services, operational capabilities, and brand capital to bolster its own position in the market. Chief Executive Officer of Quikrete, Will Magill commented on the company's benefit from Forterra in the February 22, 2021 Press Release regarding the Proposed Transaction said, "'Forterra and Quikrete are an ideal strategic fit, and this combination is a natural next step for our company, enabling us to better serve our customers across the company on their concrete projects from start to finish. We are excited to grow our capabilities in the potable water distribution market through Forterra's well-respected U.S. Pipe business. We are excited to welcome the Forterra team and bring our two great companies together.'"

41.     Clearly, while the deal will be beneficial to Quikrete it comes at great expense to Plaintiff and other public stockholders of the Company.

42.     Moreover, post-closure, Plaintiff will be frozen out of any future benefit from his investment in Forterra's bright future.

***Preclusive Deal Mechanisms***

43.     The Merger Agreement contains certain provisions that unduly benefit the Quikrete by making an alternative transaction either prohibitively expensive or otherwise impossible. Notably, in the event of termination, the merger agreement requires Forterra to pay up to $50 million to the Quikrete and/or its affiliates, if the Merger Agreement is terminated under certain circumstances.  Moreover, under one circumstance, Forterra must pay this termination fee even if it consummates any competing Acquisition Proposal (as defined in the Merger Agreement) *within 12 months following the termination* of the Merger Agreement.  The termination fee will make the Company that much more expensive to acquire for potential purchasers.  The termination fee in

combination with other preclusive deal protection devices will all but ensure that no competing offer will be forthcoming.

44.     The Merger Agreement also contains an "*Acquisition Proposals*" provision that restricts Forterra from considering alternative acquisition proposals by, *inter alia*, constraining Forterra's ability to solicit or communicate with potential acquirers or consider their proposals. Specifically, the provision prohibits the Company from directly or indirectly soliciting, initiating, proposing or inducing any alternative proposal, but permits the Board to consider an unsolicited bona fide *"Acquisition Proposal"* if it constitutes or is reasonably calculated to lead to a "*Superior Proposal*" as defined in the Merger Agreement.

45.     Moreover, the Merger Agreement further reduces the possibility of a topping offer from an unsolicited purchaser.  Here, the Individual Defendants agreed to provide to the Quikrete and/or its affiliates information in order to match any other offer, thus providing the Quikrete access to the unsolicited bidder's financial information and giving Quikrete the ability to top the superior offer.  Thus, a rival bidder is not likely to emerge with the cards stacked so much in favor of the Quikrete.

46.     These provisions, individually and collectively, materially and improperly impede the Board's ability to fulfill its fiduciary duties with respect to fully and fairly investigating and pursuing other reasonable and more valuable proposals and alternatives in the best interests of the Company and its public stockholders.

47.     Accordingly, the Company's true value is compromised by the consideration offered in the Proposed Transaction.

***Potential Conflicts of Interest***

48.     The breakdown of the benefits of the deal indicate that Forterra insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of Forterra.

49.     Most notably, the entire Proposed Transaction itself is designed to promote the interest of Lone Star at all costs, including at the expense of Plaintiff and other public stockholders of Forterra.  While the Information Statement indicates that Lone Star and other institutional investors own 52.6% and 6.7% of the Company respectively, as per the below, it fails to provide how much this will translate to in merger compensation:

| | Number of Shares of Company Common Stock Beneficially Owned | Percentage of Shares of Company Common Stock Outstanding |
|---|---|---|
| **5% Stockholder** | | |
| Forterra US Holdings, LLC[2] | 34,907,250 | 52.6% |
| Electron Capital Partners, LLC[3] | 4,419,200 | 6.7% |
| **Named Executive Officers** | | |
| Karl H. Watson Jr.[4] | 1,090,076 | 1.6% |
| Charlie Brown[5] | 798,706 | 1.2% |
| Vikrant Bhatia[6] | 379,915 | * |
| Lori Browne[7] | 329,699 | * |
| Richard Hunter[8] | 35,422 | * |
| **Directors** | | |
| Richard "Chip" Cammerer, Jr.[9] | — | — |
| Rafael Colorado[9] | — | — |
| Maureen Harrell[9] | — | — |
| Chad Lewis[9] | — | — |
| Chris Meyer[9] | 62,500 | * |
| Clint McDonnough[10] | 62,439 | * |
| John McPherson[11] | 176,029 | * |
| Jacques Sarrazin[12] | 19,149 | * |
| **All Executive Officers and Directors as a group (13 persons)** | 2,953,935 | 4.5% |

50.     Moreover, certain insiders stand to receive massive financial benefits as a result of the Proposed Transaction.  Notably, Company insiders, including the Individual Defendants,

currently own large, illiquid portions of Company stock that will be exchanged for large cash pay

days upon the consummation of the Proposed Transaction as follows:

| Name | Number of Shares of Company Common Stock | | Total Expected Value of Company Common Stock ($) |
|---|---|---|---|
| **Executive Officers** | | | |
| Karl H. Watson Jr. | 1,048,835 | $ | 25,172,040 |
| Charlie Brown | 178,108 | $ | 4,274,592 |
| Richard Hunter[1] | 35,422 | $ | 850,128 |
| Vikrant Bhatia | 95,295 | $ | 2,287,080 |
| Lori Browne | 68,141 | $ | 1,635,384 |
| **Directors** | | | |
| Richard "Chip" Cammerer, Jr. | — | $ | — |
| Rafael Colorado | — | $ | — |
| Maureen Harrell | — | $ | — |
| Chad Lewis | — | $ | — |
| Clint McDonnough | 59,629 | $ | 1,431,096 |
| John McPherson | 61,078 | $ | 1,465,872 |
| Chris Meyer | 62,500 | $ | 1,500,000 |
| Jacques Sarrazin | 16,339 | $ | 392,136 |

51.     Furthermore, upon the consummation of the Proposed Transaction, each

outstanding Company option or equity award, will be canceled and converted into the right to

receive certain consideration according to the merger agreement. Notably, certain of the Directors

own such equity awards that will be exchanged for the merger consideration as follows:

| | Number of Shares Subject to Vested Company Stock Options | Total Expected Value of Vested Company Stock Options ($)[1] | Number of Shares Subject to Unvested Options | Total Expected Value of Unvested Options ($)[1] | Number of Shares Subject to Unvested Company RSUs | Total Expected Value of Unvested Company RSUs ($)[2] | Number of Shares Subject to Unvested Company PSUs | Total Expected Value of Unvested Company PSUs ($)[3] | Total Expected Value of Company Stock Options and Company RSUs and PSUs ($)[1][2][3] |
|---|---|---|---|---|---|---|---|---|---|
| **Executive Officers** | | | | | | | | | |
| *Karl H. Watson Jr.* | — | — | — | — | 250,310 | 6,007,440 | 384,634 | 9,231,216 | 15,238,656 |
| *Charlie Brown* | 513,547 | 9,611,526 | 131,568 | 2,599,784 | 129,802 | 3,115,248 | 51,692 | 1,240,608 | 16,567,166 |
| *Richard Hunter* | — | — | — | — | — | — | — | — | — |
| *Vikrant Bhatia* | 217,060 | 3,633,263 | 81,236 | 1,605,223 | 88,968 | 2,135,232 | 38,370 | 920,880 | 8,294,598 |
| *Lori Browne* | 188,741 | 2,886,513 | 89,184 | 1,762,276 | 89,505 | 2,148,120 | 36,150 | 867,600 | 7,664,509 |
| **Directors** | | | | | | | | | |
| Clint McDonnough | 2,810 | 16,860 | — | — | 11,990 | 287,760 | — | — | 304,620 |
| John McPherson | 114,951 | 2,192,395 | 112,141 | 2,175,535 | 15,869 | 380,856 | — | — | 4,748,786 |
| Jacques Sarrazin | 2,810 | 16,860 | — | — | 11,990 | 287,760 | — | — | 304,620 |

52.     Further, certain employment agreements with certain Forterra executives, entitle such executives to severance packages should their employment be terminated under certain circumstances.  These 'golden parachute' packages are significant, and will grant each director or officer entitled to them millions of dollars, compensation not shared by Forterra common stockholders.  Notably these payments will be granted to Company insiders as follows:

| Name | Cash[2] | | Equity[3] | | Perquisites/ Benefits[4] | | Total | |
|---|---|---|---|---|---|---|---|---|
| Karl H. Watson, Jr. | $ | 4,200,960 | $ | 15,238,656 | $ | 15,896 | $ | 19,455,512 |
| Charlie Brown | $ | 1,442,960 | $ | 16,567,166 | $ | 15,896 | $ | 18,026,022 |
| Vikrant Bhatia | $ | 1,298,340 | $ | 8,294,598 | $ | 15,536 | $ | 9,608,834 |
| Lori Browne | $ | 1,591,778 | $ | 7,664,509 | $ | — | $ | 9,256,287 |
| Richard Hunter[1] | $ | — | $ | — | $ | — | $ | — |

53.     Moreover, the Information Statement is silent as to any post-close employment agreements Company insiders may have signed with Quikrete.

54.     The Information Statement must adequately disclose communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders

55.     Thus, while the Merger is not in the best interest of Forterra stockholders, it will produce lucrative benefits for the Company's officers and directors, and especially for controlling stockholder Lone Star.

***The Materially Misleading and/or Incomplete Information Statement***

56.     On March 11, 2021, the Defendants caused to be filed with the SEC a materially misleading and incomplete Information Statement that, in violation of Federal Securities Laws and

their fiduciary duties, failed to provide the Plaintiff in his capacity as a Company stockholder with material information necessary to make a decision regarding whether to seek arbitration for his shares and/or provides him with materially misleading information critical to the total mix of information available to the Company's stockholders concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process Leading Up to the Proposed Transaction*

57.     Specifically, the Information Statement fails to provide material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction.  In particular, the Information Statement fails to disclose:

a. Specific reasoning as to why the Board failed to adequately protect minority stockholder interests, including failing to include a "majority of the minority" vote provision.

b. Specific reasoning as to why as to why no committee of independent directors was created to run the sales process.

c. The specific nature of all non-disclosure agreements entered into by the Company as part of the sales process, including with Quikrete, the specific terms of all standstill restrictions contained in each agreement, including all specific conditions, if any, under which such provisions would fall away, and all specific differences between the entered into confidentiality agreements and the reasoning as to why they differed from one another

d. To adequately disclose communications regarding post-transaction employment during the negotiation of the underlying transaction must be

disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

*Omissions and/or Material Misrepresentations Concerning Forterra's Financial Projections*

58.    The Information Statement fails to provide material information concerning financial projections provided and/or adjusted by Forterra management and relied upon by Citi in its analyses.  The Information Statement discloses management-prepared financial projections for which are insufficient and/or are materially misleading.

59.    The Information Statement indicates that in connection with the rendering of Citi's fairness opinion, Citi reviewed "the historical and projected earnings and other operating data of the Company and the capitalization and financial condition of the Company".

60.    Accordingly, the Information Statement should have, but fails to provide, certain information in the projections that Forterra management provided to the Board, and Citi. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors.  Investors can come up with their own estimates of discount rates or [] market multiples.  What they cannot hope to do is replicate management's inside view of the company's prospects."  *In re Netsmart Techs., Inc. S'holders Litig*., 924 A.2d 171, 201-203 (Del. Ch. 2007).

61.     With respect to the Company Projections provided, the Information Statement fails to disclose material line items for the following metrics:

      a.  Adjusted EBITDA, including the underlying necessary metrics of net income (loss), interest expense (including (gains), losses from extinguishment of debt), depreciation and amortization, income tax benefit (expense) and before (gains) losses on the sale of property, plant and equipment, impairment and exit charges and certain other non-recurring income and expenses, such as transaction costs, inventory step-up impacting margin, non-cash compensation expense and pro-rata share of Adjusted EBITDA from equity method investee, and earnings from equity method investee;

      b.  Adjusted EBITDA (Ex. SBC), including the underlying necessary metrics of non-cash compensation expense, as well as all necessary metrics listed above necessary to calculate Adjusted EBITDA;

      c.  Unlevered Free Cash Flow, including the underlying necessary metrics of tax expenses, adjusted for capital expenditures, less change in working capital.

62.     The Information Statement also fails to disclose a reconciliation of all non-GAAP to GAAP metrics utilized in the projections.

63.     This information is necessary to provide Plaintiff in his capacity as a Company stockholders a complete and accurate picture of the sales process and its fairness.  Without this information, Plaintiff as not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the sales process and whether or not to seek appraisal for their shares.

64.     Without accurate projection data presented in the Information Statement, Plaintiff is unable to properly evaluate the Company's true worth, the accuracy of Citi's financial analyses, or make an informed decision whether to seek appraisal for their Company stock rather than accept the consideration proffered in the Proposed Transaction.  As such, the Board has breached their fiduciary duties by failing to include such information in the Information Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Citi*

65.     In the Information Statement, Citi describes its respective fairness opinion and the various valuation analyses performed to render such opinion.  However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions.  Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

66.     With respect to the *Comparable Companies Analysis*, the Information Statement fails to disclose the following:

    a.   The metrics of each comparable company; and

    b.   The specific inputs and assumptions used to determine the range of firm value of 8.4x to 9.4x utilized, specifically related to the 1.0x added to the median value.

67.     With respect to the *Precedent Transactions Analysis*, the Information Statement fails to disclose the following:

    a.   The value of each selected transaction;

    b.   The date on which each selected transaction closed;

    c.   The Company's stock based compensation; and

    d.   The Company's fully diluted share count.

68.    With respect to the *Discounted Cash Flow Analysis*, the Information Statement fails to disclose the following:

      a.    The estimated present value of the standalone unlevered after tax free cash flows of the Company from 2021 through 2025;

      b.    The terminal values for the Company;

      c.    The specific inputs and assumptions used to calculate the perpetuity growth rates of 1.0% to 2.0% utilized;

      d.    The specific inputs and assumptions used to calculate the discount rate range of 9.7% to 11.00% utilized;

      e.    The Company's weighted average cost of capital; and

      f.    The Company's fully diluted share count.

69.    These disclosures are critical for Plaintiff in his capacity as a Company stockholder to be able to make an informed decision on whether to seek appraisal for his shares rather than accept the consideration offered in the Proposed Transaction.

70.    Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes stockholder value and serves his interests. Moreover, without the key financial information and related disclosures, Plaintiff in his capacity as a Company public stockholders cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in his best

interests.   As such, the Board has breached their fiduciary duties by failing to include such information in the Information Statement.

**FIRST COUNT**

**Claim for Breach of Fiduciary Duties**

**<u>(Against the Individual Defendants)</u>**

71.     Plaintiff repeats all previous allegations as if set forth in full herein.

72.     The Individual Defendants have violated their fiduciary duties of care, loyalty and good faith owed to Plaintiff in his capacity as a Company public stockholder.

73.     By the acts, transactions and courses of conduct alleged herein, Defendants, individually and acting as a part of a common plan, are attempting to unfairly deprive Plaintiff of the true value of his investment in Forterra.

74.     As demonstrated by the allegations above, the Individual Defendants failed to exercise the care required, and breached their duties of loyalty and good faith owed to the Plaintiff in his capacity as a stockholder of Forterra by entering into the Proposed Transaction through a flawed and unfair process and failing to take steps to maximize the value of Forterra to its public stockholders, including specifically, Plaintiff.

75.     Indeed, Defendants have accepted an offer to sell Forterra at a price that fails to reflect the true value of the Company, thus depriving Plaintiff of the reasonable, fair and adequate value of his shares.

76.     Moreover, the Individual Defendants breached their duty of due care and candor by failing to disclose to Plaintiff in his capacity as a public stockholder of the Company all material

information necessary for him to make an informed decision on whether to seek appraisal for his shares rather than accept the consideration offered in the Proposed Transaction.

77.     The Individual Defendants dominate and control the business and corporate affairs of Forterra, and are in possession of private corporate information concerning Forterra' assets, business and future prospects.  Thus, there exists an imbalance and disparity of knowledge and economic power between them and Plaintiff in his capacity as a public stockholder of Forterra which makes it inherently unfair for them to benefit their own interests to the exclusion of maximizing stockholder value.

78.     By reason of the foregoing acts, practices and course of conduct, the Individual Defendants have failed to exercise due care and diligence in the exercise of their fiduciary obligations toward Plaintiff.

79.     As a result of the actions of the Individual Defendants, Plaintiff will suffer irreparable injury in that he has not and will not receive his fair portion of the value of Forterra's assets and has been and will be prevented from obtaining a fair price for his common stock.

80.     Unless the Individual Defendants are enjoined by the Court, they will continue to breach their fiduciary duties owed to Plaintiff, all to the irreparable harm of the Plaintiff.

81.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury which Defendants' actions threaten to inflict.

## SECOND COUNT

## Aiding and Abetting the Board's Breaches of Fiduciary Duty

## (Against Defendant Forterra, Inc.)

82.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

83.     Defendants Forterra, Inc. knowingly assisted the Individual Defendants' breaches of fiduciary duty in connection with the Proposed Transaction, which, without such aid, would not have occurred.

84.     As a result of this conduct, Plaintiff has been and will be damaged in that he has been and will be prevented from obtaining a fair price for his shares.

85.     Plaintiff has no adequate remedy at law.

## THIRD COUNT

## Violations of Section 14(a) of the Exchange Act

## (Against All Defendants)

86.     Plaintiff repeats all previous allegations as if set forth in full herein

87.     Defendants have disseminated the Information Statement in favor of the Proposed Transaction.

88.     Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction.  Specifically, Section 14(a) provides that:

> It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the

public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title.

89. As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

90. The Information Statement was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above. Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Information Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

91. The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

92.     The Individual Defendants were at least negligent in filing an Information Statement that was materially misleading and/or omitted material facts necessary to make the Information Statement not misleading.

93.     The misrepresentations and omissions in the Information Statement are material to Plaintiff and the Class, and at present fail to provide complete information if such misrepresentations and omissions are not corrected.

## FOURTH COUNT

### Violations of Section 20(a) of the Exchange Act

### (Against All Defendants)

94.     Plaintiff repeats all previous allegations as if set forth in full herein.

95.     The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith.  Because of their possession of such information, the Individual Defendants knew or should have known that the Information Statement was materially misleading to Company stockholders.

96.     The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein.  The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Information Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws.  The Individual Defendants were able to, and did, control the contents of the Information Statement.

The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Information Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

97.    The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of Forterra's business, the information contained in its filings with the SEC, and its public statements.  Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from the Company's stockholders and that the Information Statement was misleading. As a result, the Individual Defendants are responsible for the accuracy of the Information Statement and are therefore responsible and liable for the misrepresentations contained herein.

98.    The Individual Defendants acted as controlling persons of Forterra within the meaning of Section 20(a) of the Exchange Act.  By reason of their position with the Company, the Individual Defendants had the power and authority to cause Forterra to engage in the wrongful conduct complained of herein.  The Individual Defendants controlled Forterra and all of its employees.  As alleged above, Forterra is a primary violator of Section 14 of the Exchange Act and SEC Rule Information Statement.  By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act

WHEREFORE, Plaintiff demands injunctive relief, in his favor, and against the Defendants, as follows:

A.    Declaring and decreeing that the Proposed Transaction was entered into in breach of the fiduciary duties of the Individual Defendants and is therefore unlawful and unenforceable,

and rescinding and invalidating any merger agreement or other agreements that Defendants entered into in connection with, or in furtherance of, the Proposed Transaction;

B.      Preliminarily and permanently enjoining Defendants, their agents, counsel, employees and all persons acting in concert with them from consummating the Proposed Transaction;

C.      Directing the Individual Defendants to exercise their fiduciary duties to disseminate an Information Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.      Imposing a constructive trust, in favor of Plaintiff, upon any benefits improperly received by Defendants as a result of their wrongful conduct;

E.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and experts' fees; and

F.      Granting such other and further equitable relief as this Court may deem just and proper.

Dated: March 24, 2021

BRODSKY & SMITH, LLC

By: _____
Evan J. Smith
240 Mineola Boulevard
Mineola, NY 11501
Phone: (516) 741-4977
Facsimile (561) 741-0626

*Counsel for Plaintiff*

29